IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KUSH WILKERSON,                                    Civil Action

           Plaintiff,                          No. 2:25-cv-919

      v.

HUNTER SARVER, Sergeant;
WILLIAM SUNDAY, Sergeant; JASON
HOLT, Sergeant; CODY COVINE,
Correctional Officer; WILLIAM KEMP,
Correctional Officer; ORLANDO
HARPER, Warden of Allegheny
County Jail; JASON BEASOM, Chief
Deputy Warden; ALLEGHENY
COUNTY; JOHN DOES 1-5

           Defendants.

## Allegheny County's Brief in Support of its Motion To Dismiss Counts IV and V For Failure to State a Claim

### 1.  Allegations of the Complaint

Kush Wilkerson (Plaintiff or Wilkerson) has been a pretrial

detainee at the ACJ since July 5, 2023.  He suffers from ADHD,

PTSD, paranoid schizophrenia, major depressive disorder, bipolar

disorder, and general anxiety disorder.  ECF Doc. 1, ¶ 10.  He

alleges that on July 12, 2023, he was physically assaulted by several correctional officers. Id. ¶ 35.

On that day, Plaintiff encountered a cellmate from a prior incarceration at the ACJ in 2021 in his housing unit (Pod 4E). Id. ¶ 39. During 2021, Plaintiff reported the former cellmate for "committing obscene acts" in their cell. Id. So, on July 12, 2023, Plaintiff "swatted" his former cellmate on the back of his head. Id. ¶ 40-41. Ten or fifteen minutes later, Sergeant Sarver approached Plaintiff and accused him of "punching" his former cellmate. Id. ¶ 42. He then directed Plaintiff into the Pod 4E sallyport (the sallyport is a room on each POD that connects the cell block to the hallway.) Plaintiff complied and went with Sarver to the sallyport.

In the sallyport, Sarver told Plaintiff "to face the wall and put his hands up..." Id. ¶ 43. In response, Plaintiff turned to speak to Sarver to explain that he thought he and his former cellmate were to be kept apart. Id. Sarver tasered Plaintiff on the side of his torso. Id. Plaintiff fell to the ground and Sarver and another officer punched him in the head. Id. ¶ 44. Plaintiff tried to stand up and he was tased and punched again. Id. ¶ 45. Plaintiff then

2

took 6 or 7seven steps toward the kitchen area.  Id. ¶ 46.  The kitchen area abuts the common area of the housing unit.  They are separated by a low wall topped with a wire mesh to the ceiling.  There is a passthrough opening (the wicket) in the wire mesh.  Id. ¶ 46.  Plaintiff tried to escape through that opening into the common area.  Id.  Sarver and the other officer grabbed his legs and pulled him back towards them.  Id.  Other officers arrived and proceeded to beat, punch, and kick Plaintiff while he was partially in the opening.  Id. ¶ 48.  At the same time, Sarver tased Plaintiff in the groin.  Id. ¶ 49.  While facing the ground and still partially in the opening, Plaintiff was fully handcuffed.  Id. ¶ 50.  Sarver then tasered Plaintiff on his anus.  Id. ¶ 51.  Other officers continued to kick and punch Plaintiff until he lost consciousness.  Id. ¶ 54.  He was then taken to an elevator and his head was rammed into the back wall three or more times.  Id. ¶ 55.  The officers continued to punch and kick him while threatening him and using profane language.  Id. ¶ 56.  Officer Kemp punched Plaintiff in the face causing him to lose partial consciousness.  Id. ¶ 58.

The beating continued when Plaintiff was taken to POD 8E (the disciplinary housing unit).  Id. ¶ 58.  There, Plaintiff told a nurse he was suicidal, so ACJ staff moved him to  the  mental health unit, where he was strip searched.  Id. ¶ 58.  During the search, two officers threatened to taser him and give him a "water plunge."  Id. ¶ 59.

Plaintiff alleges that these events caused him to cough up blood, bleed from his rectum, and suffer from other physical and psychological injuries.  Id. ¶ 61-73.

## 2. Legal Claims

Count I  alleges  the named correctional officers and sergeants violated Wilkerson's Fourteenth Amendment by using excessive force against him. Count II alleges that Warden Harper and Chief Deputy Beasom are liable for those violations in their supervisory capacity. Count III claims Allegheny County is liable because it was aware of a pattern and practice of excessive force and failed to provide supervision, adopt policies, or provide training to reduce it in general and specifically as to inmates with mental illness.

Count IV claims that Allegheny County violated the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*.) because Wilkerson suffers from mental illness that qualifies as a disability under both statutes and it discriminated against him by failing to provide de-escalation and other training to its employees to allow them to deal with persons with mental illness without using unnecessary force or to otherwise reasonably accommodate his disability. Count V makes the same claim under the Rehabilitation Act as under the ADA. This motion to dismiss only relates to Counts IV and V.

### 3. Statement of the Law

To state a discrimination claim under Title II of the ADA, a person must demonstrate that: (1) he is a qualified individual; (2) with a disability; and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was  subjected to discrimination by any such entity; (4) by reason of his disability.  42 U.S.C. § 12132. Thus, Plaintiff must show that he was denied a service, program, or was discriminated against or disciplined differently because of his disability. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023);

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007).

"Because the same standards govern both the [Rehabilitation Act] and ADA claims," both claims may be addressed "in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.,* 62 F.3d 92, 95 (3d Cir. 1995)) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.")

Where compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). To show intentional discrimination under the deliberate indifference standard, "[a] claimant must allege '(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge.' " Id. at 226.

A "qualified individual with a disability" is anyone with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1955, 1998)

## 4. Argument

**A. Counts IV and V of the Complaint allege that Allegheny County's failure to prevent the alleged excessive use of force constitutes deliberate indifference to Plaintiff's rights and violates the Americans with Disabilities Act and the Rehabilitation Act fails to state a claim upon which relief can be granted.**

A Fourteenth Amendment excessive force claim involving a pretrial detainee who has a disability does not *ipso facto* mutate into a violation of the Americans with Disabilities Act (ADA). Allegheny County's argument, however, is limited to the facts of this case. It does not argue that accommodation for a mental health disability is never required by the ADA for any use of force.

For purposes of this Motion, the ADA applies to the Allegheny County Jail, and Plaintiff is a qualified individual with a disability. However, to recover money damages, Plaintiff must plead that (1) he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by it (2) <u>because of</u> his disability and (3) that Allegheny County was deliberately indifferent to the violation.. Plaintiff's failure to do so dooms his claims under both the ADA and the Rehabilitation Act.

The Complaint provides no facts that the force used against Plaintiff was used because of his mental health condition, that he was denied a service or program because of his disability, or that he was treated differently than other inmates because of his disability.  Plaintiff swatted his former cellmate **because of** a prior dispute, *i.e.*, not because of his mental illness. ECF Doc. 1, ¶ 39-41.  Then, **because** Plaintiff swatted his former cellmate, Sergeant Sarver approached and brought Plaintiff to the sallyport.  ECF Doc. 1, ¶ 42.  Then, after Sergeant Sarver commanded Plaintiff "to face the wall and put his hands up," the sergeant used force **because**

8

Plaintiff turned towards him. ECF Doc. 1, ¶ 43.        No        fact connects the use of force to Plaintiff's mental illness.    Plaintiff pleads that     Consequently, Plaintiff has failed to establish a plausible claim that the use of force occurred "because of" his disability, and failed to state a violation of the ADA…

Even if the assault by Plaintiff and the subsequent use of force against him were related to his disability, Plaintiff has not pled that he was treated differently than other inmates.  Since he was not treated differently, no ADA violation occurred. *Scherer v. Pennsylvania Dep't of Corr*., 2007 WL 4111412 at p. 9 (W.D. Pa. Nov. 16, 2007) *(*no failure to accommodate a prisoner's mental illness occurred when he was placed in a restrictive housing unit in response to his disability-caused conduct because there was no indication that his discipline differed from other inmates because of his disability)). That the ACJ set and implements of a consistent unplanned use of force standard does not discriminate against a person having a disability because there is no alternative standard –nor can there be given that these situations are unanticipated or occur without time for planning preparation or reflection by

correctional officers. *Rodriguez v. City of New York*, 197 F.3d 611,

618 (2d Cir. 1999) (a municipality does not unlawfully discriminate

against a disabled person by denying a benefit that it provides to

no one).

## B. Reasonable Accommodation

Plaintiff avers that Allegheny County denied him reasonable

accommodation for his mental health condition. He suggests these

accommodations are

> Such reasonable accommodations for Mr. Wilkerson could include but are not limited to, the provision of training to ACJ staff on recognizing when a person's behavior is a manifestation of their psychiatric disability, how to interact with people who have psychiatric disabilities so as to de-escalate situations, and the contraindications of use of force on individuals with psychiatric disabilities as well as enacting policies mandating the intervention of mental health staff before the use of any force or discipline on individuals with psychiatric disabilities.

ECF Doc. 1, ¶ 127.

> This failure to provide reasonable accommodations deprived Mr. Wilkerson equal access to safe security practices and fair disciplinary processes by failing to properly assess and de-escalate the situation and failing to take his psychiatric disability into account when using force against him.

ECF Doc. 1, ¶ 128.

The reasonable accommodation issue must be considered in the context of this case.  Plaintiff struck another inmate.  Then, Sergeant Sarver escorted Plaintiff to the sallyport to handcuff him. Sarver's and Plaintiff's interaction was peaceful until Plaintiff turned towards Sarver despite Sarver previously commanding him to do the opposite.. Sarver reacted to Plaintiff's movement with force and Plaintiff reacted to that force by attempting to escape from the officers' custody. Although Plaintiff claims he did not resist, he makes no claim that he was delusional or that he was unable to control his behavior because of his mental illness. Rather he claims he acted out of fear for his life and safety, which would be a rational response if Plaintiff's allegations are true. Again, there are no facts connecting the use of force to Plaintiff's disability.  Thus, it does not follow that the force used against Plaintiff occurred because he had a disability.

Sarver reacted to an imminent and instantaneous situation. Here, officers were not responding to an inmate who would not leave or enter his cell, or who would not return a food tray, or

similar circumstances that allowed reasonable time for reflection and action. Plaintiff heard the command to raise his hands and face away from Sergeant Sarver but reacted by turning towards Sarver., Sarver and other officers then reacted instantly. Under these circumstances the ADA does not apply. *Hainze v Richards*, 207 F.3d 795 (5th Cir. 2000) (Title II of the ADA does not apply to police acting on the street before the scene is secured.)  For an accommodation to be reasonable, there must be time for to accommodate.  In these circumstances, there was no time to accommodate Plaintiff. *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) ("In cases where the alleged violation involves the denial of a reasonable modification/accommodation, the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' " unless the need for that accommodation is obvious).  Furthermore, jail staff must often make difficult calls in tense and fast-evolving situations, and courts owe them considerable deference in such cases. *Kingsley v. Hendrickson*, 576 U.S. 389, 399, 135 S.Ct. 2466, 2474 (2015) (Running a prison is

an inordinately difficult undertaking. The safety and order at these institutions requires the expertise of correctional officials who must have substantial discretion to devise reasonable solutions to the problems they face. (Cleaned up))

The Complaint offers no facts that the officers involved in the use of force knew Plaintiff had a psychiatric disability. So, the use of force could not have occurred because of the disability. If their action was taken for a reason other than Plaintiff's disability, then Allegheny County cannot be liable for that conduct as their employer.

Similarly, the failure to accommodate claim, essentially that Allegheny County should have trained officers to deescalate, is irrelevant because there was no time to deescalate given that the use of force was unplanned and instantaneous. De-escalation is not relevant under the facts Plaintiff has pled.

Finally, as the Complaint at least implies, if the officers' use of force was intentional or part of a general pattern, which Allegheny County denies, then Plaintiff's disability is irrelevant

because the use of excessive force was a general practice, not a specific practice triggered by his disability.

## Conclusion

The Complaint does not state a claim that the alleged use of force against Plaintiff was because of his alleged disability.  Counts IV and V should, therefore, be dismissed. In the alternative, the court should dismiss the claim for monetary damages.

Respectfully submitted,

*/s/ John A. Bacharach*
John A. Bacharach
Assistant County Solicitor
Pa. I.D. #19665

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1150

John.Bacharach@alleghenycounty.us

**/s/ Robert Helwig**
Robert Parkinson Helwig
Assistant County Solicitor
Pa. I.D. #336617

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1188
robert.helwig@alleghenycounty.us

A JURY TRIAL IS DEMANDED