IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KUSH WILKERSON,                                    Civil Action

       Plaintiff,                                No. 2:25-cv-919-PLD

    v.

HUNTER SARVER, Sergeant;
WILLIAM SUNDAY, Sergeant;
JASON HOLT, Sergeant; CODY
COVINE, Correctional Officer;
WILLIAM KEMP, Correctional
Officer; ORLANDO HARPER,
Warden of Allegheny County Jail;
JASON BEASOM, Chief Deputy
Warden; ALLEGHENY COUNTY;
JOHN DOES 1-5

       Defendants.

**Allegheny County's Brief in Support of its Motion To Dismiss Counts IV and V of the Amended Complaint For Failure to State a Claim**

**1. Procedural History**

Plaintiff filed his original Complaint on July 2, 2025. ECF Doc. 1. Several defendants filed answers. Allegheny County filed a Motion to Dismiss Counts IV and V, which claimed a violation of the Americans

with Disabilities Act and the Rehabilitation Act, respectively. ECF Doc. 25. Plaintiff Kush Wilkerson responded by filing an Amended Complaint. ECF Doc 31. The first seventy-four paragraphs of the Amended Complaint, which describe the facts of the July 12, 2023, use of force involving Plaintiff are the same as in the original complaint. The only significant difference is in a section titled, <u>Denial of Equal Access to Safe Security Practices and Fair Disciplinary Process.</u> *Id.*¶¶ 75-93. These paragraphs identify symptoms that may manifest in persons with mental health conditions. *Id.* ¶¶76- 82. The Amended Complaint then attributes Wilkerson striking another inmate to his mental health condition as an impulsive response. *Id.* at ¶83. Defendant Sergeant Hunter Sarver came to Wilkerson's housing unit about one-half hour later and walked Plaintiff to the sallyport without incident. *Id.* ¶84-88. Inside the sally port, the officers told Plaintiff to turn and face the wall, and a handcuff was placed on one of his wrists. Wilkerson partially turned to explain his actions. Sarver responded by tasing Wilkerson, which was followed by more physical force and tasing by Sarver and other officers. *Id.* at ¶¶ 84-90. These "new" facts repeat facts from both the original Complaint and the Amended Complaint without material changes. They are not new facts.

## 2. Allegations of the Amended Complaint

Kush Wilkerson ("Plaintiff" or "Wilkerson") has been a pretrial detainee at the ACJ since July 5, 2023.  He has ADHD, PTSD, paranoid schizophrenia, major depressive disorder, bipolar disorder, and general anxiety disorder.  ECF Doc. 1, ¶ 10.  He alleges that on July 12, 2023, several correctional officers physically assaulted him . *Id.* ¶ 35.

On that day, Plaintiff encountered a cellmate from a prior incarceration at the ACJ in 2021 in his housing unit (Pod 4E).  *Id.* ¶ 39. During the prior incarceration, Wilkerson had reported that person for "committing obscene acts" in their cell. *Id.*  On the day in question, Wilkerson "swatted" his former cellmate on the back of his head in the day room of their housing unit.  *Id.* ¶ 40-41.  Ten or fifteen minutes later, Sergeant Hunter Sarver ("Sarver") approached Plaintiff and accused him of "punching" his former cellmate.  *Id.* ¶ 42.  Sarver directed Plaintiff to the Pod 4E sallyport. The sallyport is a room on each ACJ housing pod that connects the cell block to the hallway.  Plaintiff complied and went with Sarver to the sallyport. *Id.*

In the sallyport, Sarver told Plaintiff to face the wall and "put his hands up...".  *Id.* ¶ 43.  Plaintiff partially turned his head and torso toward Sarver to explain to Sarver that he thought he and the inmate he swatted were to be kept apart. Sarver immediately tasered Plaintiff

on the side of his torso. *Id.* Plaintiff fell to the ground and Sarver and another officer punched him in the head. *Id.* ¶ 44. Plaintiff tried to stand up and he was tased and punched again. *Id.* ¶ 45. Plaintiff then took six or seven steps toward the kitchen area. *Id.* ¶ 46. The kitchen area abuts the common area of the housing unit. The rooms are separated by a low wall topped with a wire mesh to the ceiling. There is a passthrough opening (the wicket) in the wire mesh. *Id.* ¶ 46. Plaintiff tried to squeeze through the opening into the common area. *Id.* Sarver and the other officer grabbed his legs and were pulling him back towards them. *Id.* Other officers arrived while this was happening. *Id.* ¶ 48. All the officers beat, punched, and kicked Plaintiff while he was partially in the opening. *Id.* ¶ 48. At the same time, Sarver tased Plaintiff in the groin. *Id.* ¶ 49. While facing the ground and still partially in the opening, Plaintiff was fully handcuffed. *Id.* ¶ 50. Sarver then allegedly tased Plaintiff on his anus. *Id.* ¶ 51.Other officers continued to kick and punch him. *Id.* 51. He was kicked in the head and lost consciousness. *Id.* ¶ 54. He was then taken to an elevator and his head was rammed into the back wall three or more times. *Id.* ¶ 55. The officers continued to punch and kick him and called him rude names. *Id.* ¶ 56. Officer Kemp punched him in the face causing him to lose partial consciousness. *Id.* ¶ 58. One officer stated that he would be killed. *Id.* ¶ 56.

The beating continued when officers took Plaintiff to Pod 8E (the disciplinary housing unit). *Id.* ¶ 58. There he told a nurse he was suicidal, and he was moved to 5D, a mental health unit, where he was strip searched. *Id.* ¶ 58. During that search, two officers threatened to taser him and give him a "water plunge." *Id.* ¶ 59.

Plaintiff alleges that, following these events, he coughed up blood, bled from his rectum, and experienced other physical and psychological symptoms. *Id.* ¶ 61-73.

## 2. Legal Claims

Count I alleges the named correctional officers and sergeants violated Wilkerson's Fourteenth Amendment rights by using excessive force against him. Count II alleges that Warden Harper and Chief Deputy Beasom are liable for those violations in their supervisory capacity. Count III claims Allegheny County is liable because it was aware of a pattern and practice of excessive force and failed to provide supervision, adopt policies, or provide training to reduce it in general and specifically as to inmates with mental illness.

Count IV claims that Allegheny County violated the Americans with Disabilities Act ("ADA") and Count V makes the same claim under the Rehabilitation Act as under the ADA. Wilkerson suffers from mental

5

illness and asserts that qualifies as a disability under both statutes and he alleged that the County discriminated against him by failing to provide de-escalation and other training to its employees to allow them to deal with persons with mental illness without using unnecessary force or to otherwise reasonably accommodate his disability. This motion to dismiss only relates to Counts IV and V.

### 3. Statement of the Law

To state a claim under Title II of the ADA, a plaintiff must demonstrate that: (1) he is a qualified individual, (2) with a disability, and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity, (4) by reason of his disability. Plaintiff must show that he was denied a service, program, or was discriminated against or disciplined differently because of his disability. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023), *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007).

"Because the same standards govern both the [Rehabilitation Act] and ADA claims," both claims may be addressed "in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *McDonald v. Com. of Pa., Dep't of Pub.*

*Welfare, Polk Ctr.,* 62 F.3d 92, 95 (3d Cir. 1995)) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.")

Where compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). To show intentional discrimination under the deliberate indifference standard, "[a] claimant must allege '(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge.' " *Id.* at 226.

A "qualified individual with a disability" is anyone with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1955 (1998).

## 4. Argument

**A. Counts IV and V of the Amended Complaint, which alleges that Allegheny County's failure to prevent the alleged excessive use of force against the Plaintiff violates the Americans with Disabilities Act and the Rehabilitation Act, fails to state a claim upon which relief can be granted.**

An alleged Fourteenth Amendment excessive force claim involving a pretrial detainee does not become a violation of the Americans with Disabilities Act (ADA) merely because the detainee has a disability. Allegheny County's argument, however, is limited to the facts of this case. It does not argue that the use of force involving a person with a mental health disability is never a violation of the ADA.

The ADA applies to the ACJ, and Defendant do not dispute that Plaintiff is a qualified individual with a disability for purposes of this motion. However, to state a claim upon which the Court may grant relief, the complaint must proffer facts that Plaintiff was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by it because of his disability. In addition, to recover money damages from Allegheny County, Plaintiff must allege facts it was deliberately indifferent to this violation. Plaintiff's failure to do so based on the facts pled in the

Amended Complaint is fatal to his claims under both statutes and to his claim for money.

The Amended Complaint provides no facts that the force used against Plaintiff was used because of his mental health condition, that he was denied a service or program because of his disability, or that he was treated differently than other inmates because of his disability. The use of force occurred instantly after he turned toward Sergeant Sarver to explain his belief that he should have been separated from the inmate he struck on the head with his hand. ECF Doc. 1, ¶ 42-43. Plaintiff pleads he acted impulsively because of his mental illness when he "swatted" the other inmate. However, his action was related to his personal dispute with that person. No facts connect the use of force to Plaintiff's mental illness that the correctional officers observed under the circumstances. *Scott v. Philadelphia Dep't of Prisons*, CV 18-71, 2019 WL 1490122, at *3 (E.D. Pa. Apr. 3, 2019) ("Even if mental illness contributed to his involvement in the altercation, he alleges that he was punished for his involvement in the altercation, not for having a mental illness.) Wilkerson alleges that he struck the other inmate because that person had previously committed a lewd act in his presence. Accordingly, his ADA claim fails. After that occurred, Sarver and Defendant Officer Cody Covine escorted him from the housing pod into

the sallyport.    The facts Plaintiff proffered indicate that he was approached and taken to the sallyport because he hit another inmate – not because of his disability. Plaintiff has, therefore, failed to establish a plausible claim that the use of force occurred "because of" his disability.

Moreover, even if the assault by Plaintiff and the subsequent use of force against him was related to one of his mental health diagnoses, it was still not an ADA violation because there are no facts that he was treated differently from other inmates. *Scherer v. Pennsylvania Dep't of Corr.*, 2007 WL 4111412 at p. 9 (W.D. Pa. Nov. 16, 2007) *(*No failure to accommodate a prisoner's mental illness occurred when he was placed in a restrictive housing unit in response to his disability-caused conduct because there was no indication that his discipline differed from other inmates because of his disability).    It is not discriminatory for ACJ to employ the same standard for unplanned force used on persons with disabilities and persons without disabilities.    *See Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (ruling that a municipality does not unlawfully discriminate against a disabled person by denying a benefit that it provides to no one). If allowed to proceed, Plaintiff's claim would establish that forty to sixty (or greater) percent of ACJ inmates – the approximate percentage of ACJ inmates having mental illness –

receiving unplanned or spontaneous force by a correctional office would be *prima facie* ADA violations.

## B. Reasonable Accommodation

Plaintiff avers that he was denied reasonable accommodation for his mental health condition. Failure to reasonably accommodate a disability is discrimination. *Haberle v. Troxell*, 885 F.3d 170, 180 (3d Cir. 2018). The alleged failure to accommodate Plaintiff's mental health disability consists of a list of alleged training and educational deficiencies. ECF Doc 31, ¶ 90. However, this list is a series of hypotheses that may galvanize other audiences, but they are not relevant to the facts as pled. Plaintiff alleges that Sarver should have known that Plaintiff's compliance with lawful orders might be briefly delayed because of his mental health condition, but there are no facts that evidence any delay or lack of compliance. It is also alleged that, given his mental illness, Plaintiff may have tried to explain himself there and then rather than at a later hearing, but there are no facts that establish that his mental health condition caused him to assault another inmate or disobey a lawful command, or that Sarver reacted because Plaintiff tried to explain why he hit another inmate without provocation. *Id.* De-escalation training is also irrelevant because there was nothing

to deescalate. Plaintiff was not arguing, resisting, or delaying. *Id.* Similarly, there are no facts that support a claim that anything that Plaintiff said had anything to do with the use of force. The use of force occurred based on Plaintiff's movement and not on his mental health.

The reasonable accommodation issue must be considered in the context of this case. Plaintiff struck another inmate. Then, Sergeant Sarver arrived at the housing pod and accompanied him to the sallyport, where he was in the process of handcuffing him. Sarver's and Plaintiff's interaction was peaceful until Plaintiff turned toward Sarver to offer his defense of his prior conduct. Sarver reacted to that movement with force and Plaintiff reacted by attempting to escape from the officers' custody by crawling through the wicket to another separate area. Plaintiff claims he did not resist, but he makes no claim that he was delusional nor that he was unable to control his behavior because of his mental illness. Rather, he claims he was acting in out of fear for his life and safety, which would be a rational response assuming the well-pled facts in the Amended Complaint are true. No facts connect the use of force to Plaintiff's disability. The existence of Plaintiff's disability and the occurrence of force against him does not permit a reasonable inference to be drawn that force was used <u>because</u> of his disability.

Sarver reacted to an imminent and instantaneous situation. This was not an officer responding to an inmate who would not leave or enter his cell, or who would not return a food tray, or similar circumstances that allowed reasonable time for reflection and action. This was cause and effect: Plaintiff acted and Sarver and other officers reacted instantly. There was no calm reflection or reasonable time for reflection. Under these circumstances, the ADA does not apply. *See Hainze v Richards*, 207 F.3d 795 (5th Cir. 2000) (ruling that Title II of the ADA does not apply to police acting on the street before the scene is secured).  For an accommodation to be reasonable, there must be time to accommodate. In these circumstances, there was no time for accommodation. *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) ("In cases where the alleged violation involves the denial of a reasonable modification/accommodation, the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' unless the need for that accommodation is obvious"), *Mohney v. Pennsylvania*, 809 F.Supp.2d 384, 401–02 (W.D. Pa. 2011) (ruling that an accommodation that is reasonable when time is unlimited may be unreasonable when time is limited)

The Amended Complaint pleads that Wilkerson had a mental illness, but it contains no facts that his conduct on that day was related

to his mental illness and, more significantly no facts that Sergeant Sarver or Officer Covine knew that he acting under the influence of mental illness. " 'When dealing in the amorphous world of mental disability,' it will often be impossible for a[ ] [defendant] to identify a[ ] [plaintiffs] specific disabilities, limitations, and possible accommodations." [1] There are no facts that Wilkerson asked for an accommodation regarding use of force under these circumstances or his need for an accommodation was obvious. *Montanez v. Price*, 23-2669, 2025 WL 2846695, at *10 (3d Cir. Oct. 8, 2025) (ruling that the duty to accommodate arises when a request is made or the need is open and obvious.) Since there was no request and the need was not open and obvious under these facts, Allegheny County has no duty to provide an accommodation, even assuming it was possible.

Jail staff must often make difficult calls in tense and fast-evolving situations, and courts owe them considerable deference in such cases. *Kingsley v. Hendrickson*, 576 U.S. 389, 399, 135 S.Ct. 2466, 2474 (2015) (Running a prison is an inordinately difficult undertaking. The

---

[1] *Moreno v. Hidalgo Cnty.*, 7:24-CV-0344, 2025 WL 2043946, at *13 (S.D. Tex. June 6, 2025), report and recommendation adopted, 7:24-CV-00344, 2025 WL 2029928 (S.D. Tex. July 21, 2025), quoting, *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015) (per curiam) (citation omitted).

safety and order at these institutions requires the expertise of correctional officials who must have substantial discretion to devise reasonable solutions to the problems they face)(Cleaned up). Requiring an accommodation under these circumstances is unreasonable.

The Amended Complaint offers no facts that the officers involved in the use of force knew Plaintiff had mental health issues. The ACJ hosted more than 1,700 inmates in July 2023. [2] A majority of them had mental health or substance use diagnosis and 43 percent had both in 2020.[3] Correctional officers do not have unrestricted access to inmates mental health records because of inmates' Fourteenth Amendment right to privacy of their health information. *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (ruling that an inmate's HIV status could not be disclosed without good cause). HIPAA also limits the disclosure of health information in a correctional setting to circumstances when it is necessary to protect health and safety of inmates and officers or the good order of the institution. 45 CFR §164.512(K)(5)(i)(D)(E)(F) and (ii). So, the officers' response could not have been because of Plaintiff's

---

[2] On July 12, 2023 the ACJ population was 1724. https://tableau.alleghenycounty.us/t/PublicSite/views/AC_JailPopulationManagement_Final/JailPopulationOverview?%3AshowAppBanner=false&%3Adisplay_count=n&%3AshowVizHome=n&%3Aorigin=viz_share_link&%3AisGuestRedirectFromVizportal=y&%3Aembed=y#1
[3] https://www.alleghenycountyanalytics.us/wp-content/uploads/2020/09/20-ACDHS-01-BH-CJ-09-25-2020_v2-1.pdf

alleged mental health disability. If they acted for a reason independent of Plaintiff's mental health, the County is not liable for that conduct as their employer under these facts.

Similarly, the failure to accommodate claim essentially relates to a claim that the County should have trained officers in de-escalation, but here there was no time for de-escalation because this use of force was unplanned and instantaneous.  Moreover, there are no facts that Plaintiff's conduct on this day was because of any mental health condition. His actions that day were not different from a those of a man with no mental health conditions. He swatted a person who he believed wronged him. His response after Sergeant Sarver arrived were not inconsistent with the behavior of a jail inmate without a mental health condition. Turning to explain his version of events is not a sign of mental illness – many people in his situation could do the same thing. After Plaintiff moved, Sarver reacted. De-escalation is not relevant under those circumstances. There are no facts that connect Plaintiff's mental illness to his conduct that day or to the officers conduct toward him. Conduct by a person with mental illness is not the same as conduct because of mental illness.  Use of force by an inmate with mental illness is not the same as use of force because of mental illness.

**Conclusion**

The Amended Complaint does not state a claim that the alleged use of force against Plaintiff occurred because Plaintiff had a disability. Counts IV and V should, therefore, be dismissed. In the alternative, the court should dismiss the claim for monetary damages.

Respectfully submitted,

*/s/ John A. Bacharach*
John A. Bacharach
Assistant County Solicitor
Pa. I.D. #19665

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1150

John.Bacharach@alleghenycounty.us

A JURY TRIAL IS DEMANDED