**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **KUSH WILKERSON;** | : | **Case No.** 2:25-cv-919 |
| **Plaintiff,** | : | |
| **v.** | : | |
|  | : | **ELECTRONICALLY FILED** |
| **HUNTER SARVER, Sergeant; WILLIAM** | : | |
| **SUNDY, Sergeant; JASON HOLT, Sergeant;** | : | **JURY TRIAL DEMANDED** |
| **CODY COVINE, Correctional Officer;** | : | |
| **WILLIAM KEMP, Correctional Officer;** | : | |
| **ORLANDO HARPER, Warden of Allegheny** | : | |
| **County Jail; JASON BEASOM, Chief Deputy** | : | |
| **Warden; ALLEGHENY COUNTY; JOHN** | : | |
| **DOES 1-5** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S RESPONSE TO ALLEGHENY COUNTY'S MOTION TO DISMISS**

**Introduction**

Defendant Allegheny County filed a motion to dismiss counts IV and V of Mr. Kush Wilkerson's Amended Complaint. Defendant's Motion to D1ismiss, ECF Doc. 38. The brief in support of Defendant's motion to dismiss demonstrates a lack of understanding about the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), their elements, and their applicability to this case. Defendant's Brief, ECF Doc. 39 [hereinafter "Def.'s Brief"]. It ignores the ample facts alleged in Plaintiff's Amended Complaint and makes additional, irrelevant arguments. Sufficient plausible facts are alleged in the Amended Complaint to bring a cause of action under the ADA and RA, and all of Defendant's criticisms about these claims concern disputes of fact that are not appropriately resolved at this stage.

1

## I.    Relevant Facts

Mr. Wilkerson has been a pretrial detainee since July 5, 2023. First Amended Complaint, ECF Doc. 31 [hereafter "FAC"], ¶ 10. He is diagnosed with ADHD, PTSD, paranoid schizophrenia, major depressive disorder, bipolar disorder, and generalized anxiety disorder. *Id.* Symptoms of his diagnoses include hallucinations, delusions, disorganized thoughts, erratic behavior, mood swings, being easily started, feeling on edge, aggressive outbursts, engaging in risky behavior, inability to relax, and impulsive behavior. *Id.* at ¶¶ 76-83. Medical guidelines about how to interact with individuals with schizophrenia include listening, using a gentle voice, and explaining your actions, as individuals with this diagnosis can often feel extremely afraid and paranoid about others' movements. *Id.* at ¶¶ 77-78.

Mr. Wilkerson had multiple losses in his family in a short span of time shortly prior to his most recent incarceration and reported having auditory hallucinations of deceased loved ones just days before he was assaulted. *Id.* at ¶¶ 37-38. On July 12, 2023, Mr. Wilkerson became shocked and upset upon seeing his former cellmate who had previously sexually harassed him. Mr. Wilkerson had filed a Prison Rape Elimination Act (PREA) complaint against this individual and thus believed a separation order was in place to prevent them from coming into contact. Upon seeing this individual, Mr. Wilkerson walked over to him and swatted him on the back of the head. *Id.* at ¶¶ 39-40. Mr. Wilkerson was triggered by seeing someone who previously sexually harassed him and responded impulsively—a reaction that can be better understood and explained by his psychiatric diagnoses and their common symptoms. *Id.* at ¶ 83.

After this interaction, Mr. Wilkerson immediately walked away and was not approached by Defendant Sarver until approximately 15-30 minutes later. *Id.* at ¶ 42. After one hand was fully handcuffed by Defendant Sarver, Mr. Wilkerson partially turned his torso to explain why he

reacted the way he did upon seeing his former cellmate. *Id.* at ¶ 43. Defendant Sarver then immediately tased Mr. Wilkerson in the side of his torso. *Id.* As alleged in the Amended Complaint:

> "Brief delays in compliance are common with individuals with paranoid schizophrenia or other psychiatric disabilities, as disorganized thoughts are a classic symptom[;] Mr. Wilkerson deciding to explain himself right in that moment – rather than later or at a disciplinary hearing – can also be explained by disorganized thoughts and impulsive behavior[;] Taking the time to listen and communicate is an essential part of de-escalation, especially as it relates to individuals with psychiatric disabilities[;] Individuals with paranoid schizophrenia and PTSD are easily startled and often on edge, so communicating the reason for handcuffing and transporting someone is important, especially if they are expressing confusion[;] Calmly listening and responding are among the most basic methods of de-escalation and one of the most effective methods to communicate with individuals with psychiatric disabilities… Defendant Sarver failed to engage in the most fundamental and well-known de-escalation tactics, demonstrating a lack of understanding of how psychiatric disabilities can manifest and how to respond appropriately."

*Id.* at ¶ 90.

After this initial tasing, Defendants Sarver and Covine then beat Mr. Wilkerson and tased him a second time. *Id*. at ¶¶ 44-45. Mr. Wilkerson, out of pain and fear, tried to get away from Defendants Sarver and Covine, at which point several other officers were called to the scene and participated in physically assaulting Mr. Wilkerson. *Id.* at ¶¶ 46-48. While on the ground, Defendant Sarver forced his taser against Mr. Wilkerson's groin area, where it attached to Mr. Wilkerson's scrotum, and deployed it, causing immense pain. *Id.* at ¶¶ 48-49. While Mr. Wilkerson's hands were fully handcuffed, Defendant Sarver forced the taser against his anus and deployed it a fourth time, causing further agony. *Id.* at ¶ 51. Several correctional officers, including but not limited to Defendants Sarver, Covine, Sunday, Holt, and Kemp, continued physically assaulting Mr. Wilkerson on pod 4E, then in the elevator, and on pod 8E. *Id.* at ¶¶ 54-59. The assault included kicking, punching, and ramming Mr. Wilkerson's head against the elevator wall. *Id.*

3

Mr. Wilkerson experienced severe physical injuries from the assault, including severe pain throughout his body, a deep facial abrasion, a lost tooth implant, headaches, vision impairment, and profuse rectal bleeding. *Id.* at ¶¶ 61-63. He also experienced severe mental harm, including flashbacks, insomnia, nightmares, and visual hallucinations. *Id.* at ¶¶ 64-70. Mr. Wilkerson still experiences almost daily rectal bleeding, periodically coughs up blood while exercising, becomes more easily winded, and suffers from partial visual impairment. *Id.* at ¶¶ 67-69. Since the assault, he has also experienced increased anxiety, stress, paranoia, panic, nightmares, headaches, and forgetfulness. *Id.* at ¶¶ 67-73.

ACJ has the highest numbers (by a large margin) of physical assaults and stun gun/taser use on incarcerated people by correctional officers in Pennsylvania. *Id.* at ¶¶ 21-22. ACJ officers use physical force and tasers excessively and without penological justification against incarcerated individuals with psychiatric disabilities, who make up a high proportion of the jail's population. *Id.* at ¶¶ 23-24, 124. Multiple lawsuits, including a class action, have been brought in recent years against the ACJ for using excessive force on individuals with psychiatric disabilities in violation of the ADA, including *Howard v. Williams*, No. 2:20-cv-01389 (W.D. Pa 2020) and *Walker v. Raible*, No. 2:20-cv-01868 (W.D. Pa. 2020). FAC at ¶¶ 29-32. Both cases settled out of court and the ACJ remains under a consent order for the *Howard* case requiring additional reviews of and discipline for use of force policy violations. *Id.* Additionally, several lawsuits and grievances have been filed alleging various forms of abuse perpetrated by Defendant Sarver, including claims of excessive force. *Id*. at ¶ 33. All of these facts contributed to Defendant Allegheny County's awareness of the substantial risk that ACJ officers would continue to violate the ADA in the future by using excessive force against individuals with psychiatric disabilities.

4

Some examples of reasonable accommodations that could have been provided to prevent this type of disability discrimination include:

> "[B]asic education about common psychiatric disabilities; the provision of training to ACJ staff on recognizing when a person's behavior is a manifestation of their psychiatric disability; training staff on how to interact with people who have psychiatric disabilities so as to de-escalate situations; training staff on the contraindications of using force on individuals with psychiatric disabilities; and enacting policies mandating the intervention of mental health staff before the use of any force or discipline on individuals with psychiatric disabilities."

*Id.* at ¶ 141.

## II.     Legal Standard

To assert the defense of a failure to state a claim, Defendant Allegheny County must show that, even if all factual allegations in a complaint are true, they are insufficient to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

To bring a claim under the ADA, Plaintiff must allege that (1) he is a qualified individual; (2) with a disability; and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. 42 U.S.C. § 12132. The same analysis is required for a claim brought under the RA, and thus both can be addressed simultaneously. *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). Defendant concedes that Mr. Wilkerson is a qualified individual with a disability. Def.'s Brief at 8.

Importantly, the ADA's text "demonstrates a recognition by Congress that discrimination against persons with disabilities differs from discrimination on the basis of, for example, gender, or race...[A] person with a disability may be the victim of discrimination precisely because [he] did not receive disparate treatment when [he] needed accommodation." *Presta v. Peninsula Corridor Joint Powers Bd*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998). A public entity, violates the ADA by failing to provide reasonable accommodations "in all of their programs, services, and activities" so that individuals with disabilities are accorded equal access or benefit. *Furgess v. Pennsylvania Dep't of Corr*. 933 F.3d 285, 287 (3d Cir. 2019); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.").

In that same vein, numerous cases have found that failure to adequately train law enforcement on how to respond to individuals with mental health emergencies sufficiently pleads discrimination under the ADA. *Washington v. Brown*, 2024 WL 2214686, at *13 (M.D. Pa. May 15, 2024) (finding that failure to train officers on responding to a mental health crisis sufficed to plead a failure to provide reasonable accommodation); *Snider v. Motter*, 2016 WL 4154927, at *15-16 (M.D. Pa. June 2, 2016) (finding a lack of "training with respect to individuals with mental health conditions, regarding having peaceful encounters with mentally disabled persons, deescalating situations involving mentally unstable individuals and/or responding to calls that may require a 302 and/or involuntary commitment" sufficiently pleads a failure to provide reasonable accommodation); *Broadwater v. Fow*, 945 F.Supp.2d 574, 591 (M.D. Pa. 2013) (failure to "properly train troopers to have peaceful encounters with mentally and physically disabled persons" and failure to "establish a proper policy for handling such encounters"

6

sufficiently pleads a failure to provide reasonable accommodation);  *Bentler v. Nederostek*, 2023 WL 3510822, at *9 (M.D. Pa. May 17, 2023) (allegations that police did not receive "specialized training for interacting with individuals with mental health conditions" nor "any specialized training with respect to individuals with mental health conditions or deescalating situations involving mentally unstable individuals and/or suspects" sufficiently pleads a failure to provide reasonable accommodation); *Heckensweiler v. McLaughlin*, 517 F.Supp.2d 707, 718 (E.D. Pa. 2007) (allegations of a lack of "reasonable modifications to [law enforcement's] policies, practices and procedures to ensure that [the plaintiff's] needs as an individual with a disability would be met" sufficiently pleads a failure to provide reasonable accommodation).

To receive compensatory damages under the ADA, a plaintiff must also demonstrate deliberate indifference. *Furgess*, 933 F.3d 289. To demonstrate deliberate indifference, a plaintiff must show that a defendant had "(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) fail[ed] to act despite that knowledge." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018). Knowledge can be adequately pled when the likelihood of encountering an individual with a psychiatric disability on the job is high. *Bentler*, 2023 WL 3510822, at *9 (M.D. Pa. May 17, 2023) ("[T]he probability of the police encountering a mentally ill individual is so great that a reasonably jury could find that failure to train officers on the constitutional and statutory obligations of an officer in those situations constitutes deliberate indifference.") Relatedly, the Third Circuit has also found that alleging facts which prove the risk of harm is obvious can on its own support a finding of deliberate indifference. *Haberle*, 885 F.3d at 181-82.

**III.    Plaintiff Alleged Sufficient Plausible Facts to State Claims Under the ADA and RA**

While Defendant repeats throughout its brief that "no facts" were pled demonstrating that Plaintiff was discriminated against due to his disability—Defendant's saying so does not make it true. Def.'s Brief at 39, 9-16. Ample facts, repeated above, are alleged throughout the Amended Complaint explaining how Mr. Wilkerson's disabilities manifested, describing the lack of training on psychiatric disabilities and deescalation provided as a failure to provide a reasonable accommodation, and explaining how that training could have prevented the discriminatory assault on Mr. Wilkerson. FAC at ¶¶ 75-93.

Defendant Allegheny County does not agree that Mr. Wilkerson was discriminated against due to his disability. Def.'s Brief at 8-9. However, whether or not Defendant agrees with the facts alleged is immaterial at this stage. It is indisputable that ample facts were alleged for every element of the ADA and RA claims. Causation is one of those clearly pled elements: Defendant Sarver did not engage in de-escalation tactics (listening, communicating, explaining his actions, etc.) and instead resorted to extreme violence when Mr. Wilkerson was trying to explain himself – something that could have been prevented had Defendants been adequately trained on how to interact with individuals with psychiatric disabilities such as Mr. Wilkerson.

Defendant Allegheny County points to other cases wherein individuals with and without disabilities are treated the same resulting in the dismissal of ADA claims, but they are all distinguishable from the present case. In *Scherer v. Pennsylvania Dep't of Corr.*, the court held that discrimination was not adequately alleged where the discrimination in question was merely placement in the RHU for conduct alleged to have resulted from mental disabilities. 2007 WL 4111412, at * 9 (W.D. Pa. Nov. 16, 2007). But Mr. Wilkerson does not claim that his placement in the RHU constituted discrimination. Rather, he contends that the discrimination he faced was

being tased repeatedly, including twice in the genitals and once while fully handcuffed, and being badly beaten by several corrections officers because Defendant Sarver did not utilize (or attempt to utilize) de-escalation techniques. *Rodriguez v. City of New York* is also distinct as it dealt with the lack of coverage for safety monitoring services by Medicaid for certain disabled individuals totally outside the context of incarceration. 197 F.3d 611, 618 (2d Cir. 1999). Neither case alleges discrimination in the same manner as Mr. Wilkerson.

Plaintiff listed numerous proposed reasonable accommodations in his Amended Complaint. FAC at ¶¶ 141, 149. Defendant Allegheny County describes this list as a "series of hypotheses that may galvanize other audiences" and "not relevant." Def.'s Brief at 11. However, these proposed accommodations are more detailed than the previously listed cases that have overcome 12(b)(6) dismissal. Courts have found examples such as "employing the passage of time to advantage, using non-threatening communication, respecting the individual's comfort zone and not unreasonably agitating or exciting the individual and instead calming the situation" to be sufficiently pled accommodations as well, and they are similar to the reasonable accommodations listed by Mr. Wilkerson. *Bentler*, 2023 WL 3510822 at *10.

Defendant states that "even if the assault by Plaintiff and the subsequent use of force against him was related to one of his mental health diagnoses, it was still not an ADA violation because there are no facts that he was treated differently from other inmates." As mentioned, this is a fundamental misunderstanding of the ADA – the very fact that individuals with a disability are not treated differently than non-disabled individuals can be the basis for an ADA claim and demonstrate a failure to provide reasonable accommodation, as it does in this case. In *Snider v. Motter*, the court found that discrimination was sufficiently pled where the plaintiff argued that "by simply treating [the plaintiff] the same as other inmates without disabilities and failing to

9

consider his disability with respect to the disciplinary process, [Clinton County Correctional Facility] in fact acted discriminatorily by failing to make accommodations." 2016 WL 4154927, at *8 (M.D. Pa. June 2, 2016).

Defendant Allegheny County also stated that, "[i]f allowed to proceed, Plaintiff's claim would establish that forty to sixty (or greater) percent of ACJ inmates – the approximate percentage of ACJ inmates having mental illness receiving unplanned or spontaneous force by a correctional office would be prima facie ADA violations." This is both irrelevant and inaccurate. Plaintiff does not allege that Defendant's conduct violated that ADA merely because he has a disability – Plaintiff clearly links his conduct with symptoms of his disabilities and explains why his treatment constituted discrimination under the ADA. Plaintiff does not argue that any unplanned use of force against an individual with a disability violates the ADA, but a use of force that happens when de-escalation is possible can violate the ADA if inflicted on a qualified individual with a disability because such a use of force would entail the deprivation of a reasonable accommodation to utilize de-escalation techniques.

Plaintiff also pled ample plausible facts alleging that Defendant was aware that Plaintiff's rights under the ADA were substantially like to be violated, including but not limited to known (and ACJ's self-reported) statistics regarding the high number of uses of force at ACJ, the regular use of tasers/stun guns and physical force by corrections officers against individuals with disabilities for purely punitive reasons, multiple class action lawsuits brought against the jail wherein ADA claims were brought due to the use of excessive force on individuals with psychiatric disabilities, and numerous lawsuits and grievances against Defendant Sarver in particular for excessive force. FAC at ¶¶ 21-33.

10

Defendant quotes from *Kiman v. New Hampshire Dep't of Corr.* that the ADA's reasonable accommodation requirement often will not apply unless "triggered by a request." 451 F.3d 274, 283 (1st Cir. 2006). The two sentences following the portion Defendants cite make clear that this is not always the case:

> "This is because a person's 'disability and concomitant need for accommodation are not always known ... until the [person] requests an accommodation.' However, 'sometimes the [person]'s need for an accommodation will be obvious; and in such cases, different rules may apply.'"

*Id.* (internal citations omitted).

As elaborated on above, the need for the accommodation should have been obvious enough (due to the various statistics that Defendant was aware of regarding the prevalence of psychiatric disabilities within ACJ and the multiple lawsuits filed against them for similar reasons) that a request for the reasonable accommodations Plaintiff was deprived of should not have been necessary. Such a request is also inapposite in the context of an accommodation that requires staff training on de-escalation, as that training by definition must occur prior to staff being put in a scenario that may involve potential use of force against an individual with psychiatric disabilities, and staff utilization of de-escalation training is not predicated upon their being aware of any actual psychiatric diagnoses of the incarcerated person.

Defendant states that there was no way for Defendants Sarver and Covine to know that Mr. Wilkerson had psychiatric disabilities. Def.'s Brief at 13-14. Individual Defendants' personal knowledge of Mr. Wilkerson's disability is not an element of an ADA claim and is thus irrelevant – it is the *County's* knowledge of the disability that must be established, as that is the Defendant against whom this claim is brought. Defendant Allegheny County does not dispute that it knew of Mr. Wilkerson's disabilities, and even acknowledged that "a majority of individuals at the ACJ

11

in 2023 had either a mental health or substance use diagnoses "and 43% had both in 2020." Def.'s Brief at 15.

Defendant Allegheny County appears to misunderstand the ADA claim to allege that certain individual officers used excessive force because Mr. Wilkerson was disabled, when actually the claim is that the County discriminated against Mr. Wilkerson by failing to adequately train their officers on psychiatric disabilities and the importance of de-escalation tactics despite knowing that he (and many others in the ACJ) suffered from psychiatric disabilities. Even if individual Defendants' knowledge was relevant, the likelihood of encountering an incarcerated individual with mental illness at ACJ is high enough that this would also be adequately pled.

Defendant argues that there was not time for providing reasonable accommodations because exigent circumstances existed. However, they do not dispute the fact that it was Defendant Sarver who escalated a non-violent situation at least several minutes after Mr. Wilkerson interacted with his former cellmate. Def.'s Brief at 11-12. Plaintiff's Amended Complaint adequately alleges that the encounter between Defendant Sarver and Plaintiff did not involve an imminent risk such that de-escalation was not possible, and any dispute Defendant Allegheny County may have with that allegation is not capable of resolution at the motion to dismiss stage.

Other cases relied on by Defendant involved much more serious circumstances and imminent safety risks. *Hainze v Richards* involved an individual armed with a knife walking toward a police officer, who shot him when he was within a few feet. 207 F.3d 795, 801 (5th Cir. 2000). *Mohney v. Pennsylvania*, also cited by Defendant, concerned a situation where a mentally ill decedent doused himself in gasoline, was tased after not complying with orders, and died from burns resulting in the gasoline alighting from the taser prongs. 809 F. Supp. 2d 384, 387 (W.D.

12

Pa. 2011). Critically, the court dismissed this claim specifically because not enough facts were described in the complaint about why the troopers were called to decedent's home to determine if there were reasonable accommodations that could be made in that context – not because exigent circumstances were present. *Id.* at 402.

Mr. Wilkerson partially turning to explain himself is not an exigent circumstance. As Defendant acknowledges, Mr. Wilkerson was not arguing or resisting. Def.'s Brief at 12. Courts have found that even far more serious circumstances do not warrant the application of the exigent circumstances exception. *Washington v. Brown*, 2024 WL 2214686, at *15 (May 15, 2024) (holding that a mentally disabled individual running away with a long rifle is not necessarily a situation where no plausible reasonable accommodation could apply.) The facts alleged by Mr. Wilkerson describe a situation wherein plausible reasonable accommodations could apply and thus meet the standard to overcome a motion to dismiss.

**Conclusion**

Defendant Allegheny County's contention that no facts have been pled which demonstrate discrimination on the basis of Plaintiff's disability is wholly false. Ample plausible facts have been pled supporting all elements of Mr. Wilkerson's ADA and RA claims, including: the common symptoms of Mr. Wilkerson's psychiatric disabilities; how these disabilities contributed to Mr. Wilkerson's behavior on July 12, 2023; Defendant Sarver's failure to recognize common symptoms of psychiatric disabilities; Defendant Sarver's failure to engage in or even attempt at deescalation; Defendant Allegheny County's awareness of the pattern of excessive force being used against incarcerated individuals with psychiatric disabilities; Defendant Allegheny County's failure to provide reasonable accommodation in the form of

13

providing staff with training on interacting with individuals with psychiatric disabilities; and examples of what such trainings could include.

Furthermore, it is well established that a failure to provide training about mental health disabilities can be a form of discrimination under the ADA, and Mr. Wilkerson has adequately pled such facts in his Amended Complaint as well. Any other arguments Defendant Allegheny County may have regarding the degree to which Mr. Wilkerson's disabilities affected his behavior, whether individual Defendants had subjective knowledge of Mr. Wilkerson's disabilities, and whether deescalation would have been effective are all questions of fact that would not be appropriate to decide at this stage. Mr. Wilkerson has met his burden of adequately alleging facts which state a plausible claim for relief under the ADA and RA.

Respectfully submitted,

*/s/ Dolly Prabhu*
PA I.D. No 328999
dprabhu@alcenter.org
*/s/ Jaclyn Kurin\**
D.C. I.D. No. 1600719
jkurin@alcenter.org
*/s/ Bret Grote*
PA I.D. No. 317273
bretgrote@alcenter.org
**Abolitionist Law Center**
PO Box 23032
Pittsburgh, PA 15222
412-654-9070
*\*pro hac vice pending*

14