**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KUSH WILKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-919 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SERGEANT HUNTER SARVER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

### I.      Recommendation

It is respectfully recommended that Allegheny County's Motion to Dismiss Counts IV and

V of the Amended Complaint (ECF No. 38) be denied.

### II.     Report

#### A.      <u>Relevant Procedural History</u>

Plaintiff Kush Wilkerson brings this counseled civil rights action pursuant to 42 U.S.C.

§ 1983 against Allegheny County and multiple employees of the Allegheny County Jail ("ACJ").

In the Amended Complaint (ECF No. 31), Plaintiff asserts violation of his rights under the

Fourteenth Amendment, as well as claims under the Americans with Disabilities Act ("ADA") and

the Rehabilitation Act ("RA"). The claims stem from an incident that occurred while Plaintiff was

a pretrial detainee in ACJ.

Allegheny County has filed a partial Motion to Dismiss and a Brief in support, seeking to

dismiss the ADA and RA claims against it. (ECF Nos. 38-39.) Plaintiff filed a Response. (ECF Nos.

41.) The motion is ripe for review.

**B.**     **Facts Alleged in the Amended Complaint**

Plaintiff had previously been incarcerated in ACJ from December 2013 to March 2016, and again from August 2020 to February 2021. On July 5, 2023, he was arrested and detained at ACJ. (ECF No. 31 ¶ 35.) He had "known" diagnoses of ADHD, PTSD, paranoid schizophrenia, major depressive disorder, and general anxiety disorder. (*Id.* ¶ 36.) He reported to a mental health specialist at ACJ on July 5, 2023, that he was experiencing auditory hallucinations. (*Id.* ¶ 38.)

On July 12, 2023, Plaintiff encountered a former cellmate against whom he had filed a PREA complaint several years before. (*Id.* ¶ 39.) He was shocked and upset as he believed there was a separation in place to prevent them from crossing paths. (*Id.* ¶ 40.) Plaintiff "swatted" his former cellmate on the back of the head in the dayroom and then walked away. (*Id.* ¶ 41.)

About 15-30 minutes later, Sergeant Hunter Sarver approached Plaintiff and accused him of punching the former cellmate. (*Id.* ¶ 42.) He took Plaintiff to the sallyport where Correctional Officer Cody Covine was present. (*Id.*) Sarver told Plaintiff to face the wall and put his hands up. (*Id.* ¶ 43.) Sarver cuffed one of Plaintiff's hands as Plaintiff tried to explain his understanding of the separation order. (*Id.*) Plaintiff partially turned his torso and head in an effort to talk to Sarver. (*Id.*) Sarver then tased Plaintiff in the side of his torso. (*Id.*)

Plaintiff fell to the ground. (*Id.* ¶ 44.) Both Sarver and Covine punched Plaintiff while he was on the ground. (*Id.*) When Plaintiff tried to stand, Sarver tased him in the front of his torso. (*Id.*)

Because he was in great pain and feared for his life, Plaintiff tried to leave the kitchen area, walking around 5-7 steps, and tried to squeeze through a wicket opening to return to the pod, but he was grabbed by either Sarver or Covine and pulled back. (*Id.* ¶ 46.) Plaintiff heard a "Code 3" called, after which an additional 8-10 corrections officers arrived and they began to punch and

kick him. (*Id.* ¶¶ 47-48.) While he was facing the ground and partially through the wicket opening, Sarver then deployed his taser, which attached to Plaintiff's scrotum, causing severe pain. (*Id.* ¶ 49.) At some point, Plaintiff was fully handcuffed, after which Sarver tased Plaintiff between his buttocks. (*Id.* ¶¶ 50-51.) The taser attached to Plaintiff's anus, causing unbearable pain. (*Id.* ¶ 51.) Plaintiff continued to be kicked and punched. (*Id.* ¶ 54.) He was kicked in the head and lost consciousness. (*Id.*)

Plaintiff regained consciousness while being hauled to the elevator where officers rammed his head into the back of the elevator at least three times and continued to kick and punch him while calling him slurs and threatening him. (*Id.* ¶¶ 55-56.) When Plaintiff begged Correctional Officer William Kemp to stop the assault, Kemp punched Plaintiff in the face and Plaintiff partially lost consciousness again.

Because Plaintiff told a nurse he was suicidal, he was taken to a mental health pod, where Kemp, Holt and three other officers conducted a strip search, continuing to taunt him. (*Id.* ¶¶ 58-59.)

Plaintiff alleges that he suffered various physical and mental injuries after the assault, some which persist to the present. (*Id.* ¶¶ 61-73.)

Plaintiff is diagnosed with paranoid schizophrenia, bipolar disorder, PTSD, major depressive disorder, and general anxiety disorder. (*Id.* ¶ 75.)[1] According to the Amended Complaint, Plaintiff's reaction to seeing his former cellmate was influenced by these disabilities. (*Id.* ¶ 83.) His decision to try to explain his reaction to Sarver in the moment, rather than later or

---

[1] The Amended Complaint alleges that symptoms of schizophrenia include hallucinations, delusions, cognitive impairment, disorganized thoughts, and erratic behavior. (*Id.* ¶ 76.) Bipolar disorder indicators include impulsive behavior, hallucinations, delusions, episodes of mania, mood swings, and suicidality. (*Id.* ¶ 80.) Low mood, decreased energy, and suicidality are signs of depression. (*Id.* ¶ 81.) Generalized anxiety disorder can include being easily startled, an inability to relax, headaches, and fatigue. (*Id.* ¶ 82.)

at a disciplinary hearing, could be explained by disorganized thoughts and impulsive behavior. (*Id.* ¶ 90.)

## C.    **Legal Standard**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). When "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

## D.    **Discussion**

In Count IV, Plaintiff brings a claim under the ADA against Allegheny County (ECF No. 31 ¶¶ 134-143). He asserts that the County knew of his disabilities but failed to accommodate them through education and training of staff. He also claims that the County denied his "equal access to safe security practices and fair disciplinary procedures by failing to properly assess and de-escalate the situation and failing to take his psychiatric disability into account when communicating with and using force against him." (*Id.* ¶ 142.) He further claims that Allegheny County "permit[ted], authoriz[ed], acquiesce[ed] in, and otherwise enable[d] staff to use unreasonable force rather than attempting de-escalation in response to behaviors that were manifestations of mental health conditions and when such force was not necessary." (*Id.* ¶ 143.)

Plaintiff asserts a claim against Allegheny County under the RA on the same bases in Count V. (*Id.* ¶¶ 144-151.)

Under the ADA, no qualified individual with a disability may be excluded from participation in the programs of a public entity by reason of his disability. 42 U.S.C. § 12132. The standard for liability under the RA is the same. *Bowers v. Nat'l Collegiate Ath. Ass'n*, 475 F.3d 524, 535 n.12 (3d Cir. 2007). To state a discrimination claim under the ADA or the RA, a plaintiff must allege that he is a qualified individual with a disability who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity by reason of that disability. *Kokinda v. Pennsylvania Dep't of Corr.*, 779 Fed. Appx. 944, 950 (3d Cir. 2019) (citing *Haberle v. Troxell*, 885 F.3d 171, 178 (3d Cir. 2018)). To satisfy a claim for compensatory damages for such a claim, the plaintiff must make a showing of deliberate indifference, that is, knowledge that a federally protected right is substantially likely to be violated and a failure to act despite that knowledge. *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260-265 (3d Cir. 2013).

For purposes of this motion, Allegheny County does not dispute that Plaintiff is a qualified individual with a disability. (ECF No. 39 at 8.) It also acknowledges that the use of force involving a person with a mental health disability can violate the ADA. (*Id.*) At the same time, the County contends that the facts pleaded in the Amended Complaint, even if taken as true, are insufficient to establish that the use of force against Plaintiff was because of his mental illness, that he was denied a service because of his disability, or that he was treated differently than other inmates as a result of his disability. (*Id.* at 8-9.) Allegheny County also argues that because Plaintiff has failed to allege that it was deliberately indifferent to Plaintiff's disability, these counts must be dismissed as Plaintiff is not entitled to compensatory damages. (*Id.* at 8.)

The County claims that according to the Amended Complaint, Plaintiff was taken to the sallyport by correctional officers because he hit another inmate, not due to a disability. (*Id.* at 10.) Thus, it argues, any use of force did not occur because of a disability. (*Id.*) And it asserts that Plaintiff was not treated any differently than any other inmate as it is not discriminatory to employ the same standard for unplanned force that is used on persons with and without disabilities. (*Id.*)

According to Allegheny County, Plaintiff's claims under the ADA and RA fail because the facts pleaded do not support a finding that he was denied a reasonable accommodation for his disability. (*Id.* at 11-16.) It claims that the Amended Complaint does not include any facts that establish that Plaintiff's mental health issues caused him to hit another inmate or to try to explain why he did so to Sarver, or that Sarver reacted because of this attempted explanation. (*Id.*) It also argues that Plaintiff does not allege that these correctional officers knew of Plaintiff's disability or that Plaintiff's actions which lead to the use of force were as a result of mental illness. (*Id.* at 15.) As a result, the County argues, the allegations in the Amended Complaint fail to demonstrate that Plaintiff asked for or required a reasonable accommodation regarding the use of force. (*Id.* at 14.) Thus, Plaintiff's allegations about the lack of training in de-escalation techniques is irrelevant because the use of force was unplanned and spontaneous. (*Id.* at 16.)

In his opposition to the dismissal of Counts IV and V, Plaintiff asserts that he has pleaded sufficient facts to support each element of his ADA and RA claims. (ECF No. 41 at 8-13.) He argues that contrary to the County's suggestion that his ADA claim is based on the assertion that excessive force was applied because Plaintiff has a disability, it is in fact based on his assertion that the County discriminated against him by failing to adequately train its officers regarding psychiatric disabilities and how to employ de-escalation techniques despite the number of inmates housed in ACJ who have mental health issues. (*Id.* at 12.). According to Plaintiff, if the County

had trained its correctional officers in de-escalation techniques in relation to inmates with mental health disabilities, it could have prevented the discriminatory excessive force employed by correctional officers on Plaintiff. (*Id.* at 8.) And, Plaintiff contends, the County's argument that the individual defendants may not have known of his disability misses the point because it is knowledge and actions of the County, the only defendant in the ADA and RA claims, and its failure to adequately train, that are at issue. (*Id.* at 11-12.)

Plaintiff also notes that the County's suggestion that Plaintiff was treated no differently than other inmates demonstrates a fundamental misunderstanding of the ADA. (*Id.* at 9-10.) He argues that the fact that a person with a disability is treated the same as someone without a disability can, in fact, form the basis for an ADA claim, and the failure to make reasonable accommodations in that circumstance can state such a claim. (*Id.*, citing *Snider v. Motter,* Civ. A. No. 4:13-1226, 2016 WL 4154927, at *8 (M.D. Pa. June 2, 2016)).

The Court agrees that Plaintiff has adequately stated plausible claims under the ADA and RA.

As alleged in the Amended Complaint, Plaintiff's act of hitting his former cellmate and his reaction to Sarver were, or could have been, attributable to the symptoms of his disabilities. Plaintiff alleges that despite knowing that he was a qualified individual with disabilities, the County failed to provide him with any reasonable accommodations. The Amended Complaint alleges that among other things, the County failed to adequately educate and train its correctional officers about mental health issues and the use of appropriate de-escalation tactics during encounters with inmates like Plaintiff who have mental health disabilities. As a result, Plaintiff claims, ACJ corrections officers routinely exert force on inmates even though they are exhibiting symptoms of their psychiatric disabilities. Further, according to the allegations of the Amended

Complaint, the County failed to take Plaintiff's psychiatric disability into account when communicating with him and using force against him, thus depriving him of safe security practices and fair disciplinary procedures. Plaintiff asserts that proper training could have prevented the excessive force applied by the individual defendants.

In short, Plaintiff alleges that the force used against him stemmed from conduct that was attributable to his known disabilities, and the County's failure to accommodate these disabilities was because of lack of proper education and training. Accepting the facts pleaded in the Amended Complaint as true for purposes of the motion to dismiss, Plaintiff has stated plausible claims under the ADA and RA. As a result, the County's Motion to Dismiss Counts IV and V should be denied.

**E.      Conclusion**

For these reasons, it is respectfully recommended that the Court deny Allegheny County's Motion to Dismiss Counts IV and V.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:  April 14, 2026                                         /s/ Patricia L. Dodge
                                                              PATRICIA L. DODGE
                                                              United States Magistrate Judge