IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KUSH WILKERSON,<br>        Plaintiff, | Civil Action |
|         v. | No. 2:25-cv-919 |
| HUNTER SARVER, Sergeant;<br>WILLIAM SUNDAY, Sergeant;<br>JASON HOLT, Sergeant; CODY<br>COVINE, Correctional Officer;<br>WILLIAM KEMP, Correctional<br>Officer; ORLANDO HARPER,<br>Warden of Allegheny County Jail;<br>JASON BEASOM, Chief Deputy<br>Warden; ALLEGHENY COUNTY;<br>JOHN DOES 1-5 |  |
|         Defendants. |  |

**Allegheny County's Objections to the Report and Recommendation (ECF Doc. 44) to Deny its Motion To Dismiss Counts IV and V For Failure to State a Claim**

### 1. Allegations of the Complaint

Kush Wilkerson (Plaintiff or Wilkerson) has been a pretrial detainee at the ACJ since July 5, 2023. He suffers from ADHD, PTSD, paranoid schizophrenia, major depressive disorder, bipolar disorder, and general anxiety disorder. ECF Doc. 1, ¶ 10. He alleges that on July 12, 2023, he was physically assaulted by several correctional officers. Id. ¶ 35.

On that day, Plaintiff encountered a cellmate from a 2021 incarceration at the ACJ in his housing unit (Pod 4E). *Id.* ¶ 39.  He had reported that person for "committing obscene acts" in their cell. *Id.*  While in the dayroom of the ACJ on the day in question, he "swatted" his former cellmate on the back of his head. *Id.* ¶ 40-41.  Ten or fifteen minutes later, Sergeant Sarver approached Plaintiff and accused him of "punching" his former cellmate. *Id.* ¶ 42.  Sarver then directed Plaintiff to the Pod 4E sallyport (The sallyport is a room on each housing pod that connects the cell block to the hallway.) Plaintiff complied and went with Sergeant Sarver to the sallyport.

In the sallyport, Sergeant Sarver told Plaintiff to face the wall and "put his hands up...". Id.  ¶ 43.  While this was occurring, Wilkerson tried to explain that he thought he and his former cellmate were to be kept apart. As Plaintiff partially turned his head and torso toward Sergeant Sarver  the Sergeant tasered Plaintiff on the side of his torso. *Id.*  Plaintiff fell to the ground and Sergeant Sarver and another officer punched him in the head. *Id.* ¶ 44. Plaintiff tried to stand up and he was tased and punched again. *Id.* ¶ 45. Plaintiff then took 6 or 7 steps toward the kitchen area. *Id.* ¶ 46. The kitchen area abuts the common area of the housing unit.  They are separated by a low wall topped with a wire mesh to the ceiling.  There is a passthrough opening (the wicket) in the wire mesh. *Id.* ¶ 46.  Plaintiff tried to squeeze

2

through the opening into the common area. *Id.* Sergeant Sarver and the other officer grabbed his legs, and they were pulling him back towards them. *Id.* Other officers arrived while this was happening. *Id.* ¶ 48. All the officers beat, punched, and kicked Plaintiff while he was partially in the opening. *Id.* ¶ 48. At the same time, Sergeant Sarver tased Plaintiff in the groin. *Id.* ¶ 49. While facing the ground and still partially in the opening, Plaintiff was fully handcuffed. *Id.* ¶ 50. Sarver then allegedly tased Plaintiff on his anus. *Id.* ¶ 51. Other officers continued to kick and punch him. *Id.* 51. He was kicked in the head and lost consciousness. *Id.* ¶ 54. He was then taken to an elevator and his head was rammed into the back wall three or more times. *Id.* ¶ 55. The officers continued to punch and kick him and called him rude names. *Id.* ¶ 56. Officer Kemp punched him in the face causing him to lose partial consciousness. Id. ¶ 58. One officer stated that he would be killed. *Id.* ¶ 56.

The beating continued when he was taken to POD 8E (the disciplinary housing unit). *Id.* ¶ 58. There he told a nurse he was suicidal, and he was moved to a 5D, a mental health unit, where he was strip searched. *Id.* ¶ 58. While this was occurring, two officers threatened to taser him and give him a "water plunge." *Id.* ¶ 59.

Plaintiff alleges following these events he was coughing up blood and bleeding from his rectum and he suffered from other physical and psychological injuries. *Id.* ¶ 61-73.

## 2. Legal Claims

Count I- III alleges that Plaintiff was subjected to excessive force at the ACJ. These claims are not at issue in this objection.

Count IV claims that Allegheny County violated the Americans with Disabilities Act ("ADA") and Count V makes the same claim under the Rehabilitation Act. It is alleged that Wilkerson suffers from mental illness and asserts that qualifies as a disability under both statutes and he alleged that the County discriminated against him by failing to provide de-escalation and other training to its employees to allow them to deal with persons with mental illness without using unnecessary force or to otherwise reasonably accommodate his disability.

## 3. The Report and Recommendation

The filed Report and Recommendation was to deny Allegheny County's Motion to Dismiss Counts IV and V. ECF Doc. 44.  The bases for that recommendation was that Allegheny County failed to accommodate the Plaintiff's mental illness by providing deescalation training on how to deal with inmates with mental illness. For the reasons stated below, Allegheny

4

County believes that the Report and Recommendation is in error because there was no time for deescalation under the facts of this case.

### 4. Statement of the Law

To state a claim under Title II of the ADA, a plaintiff must demonstrate that: (1) he is a qualified individual; (2) with a disability; and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. Plaintiff must show that he was denied a service, program, or was discriminated against or disciplined differently because of his disability. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007).

"Because the same standards govern both the [Rehabilitation Act] and ADA claims," both claims may be addressed "in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.")

Where compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard. *Durham*, 82 F.4th at  225. To show intentional discrimination under the deliberate indifference standard, "[a] claimant must allege '(1) knowledge that a federally protected right is substantially likely to be violated … and (2) failure to act despite that knowledge.' " *Id.* at 226.

A "qualified individual with a disability" is anyone with a disability" who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1955(1998)

## 4. Argument

### A. Reasonable Accommodation

Plaintiff avers that he was denied reasonable accommodation for his mental health condition. He suggests these accommodations are

> Such reasonable accommodations for Mr. Wilkerson could include but are not limited to, the provision of training to ACJ staff on recognizing when a person's behavior is a manifestation of their psychiatric disability, how to interact with people who have psychiatric disabilities so as to de-escalate situations, and

the contraindications of use of force on individuals with psychiatric disabilities as well as enacting policies mandating the intervention of mental health staff before the use of any force or discipline on individuals with psychiatric disabilities.

ECF Doc 1, ¶ 127.

This failure to provide reasonable accommodations deprived Mr. Wilkerson equal access to safe security practices and fair disciplinary processes by failing to properly assess and de-escalate the situation and failing to take his psychiatric disability into account when using force against him.

ECF Doc 1, ¶ 128.

The reasonable accommodation issue must be considered in the context of this case.  Plaintiff struck another inmate. Sergeant Sarver arrived at the scene and escorted him to the sallyport, and he was in the process of handcuffing him. Sarver's and Plaintiff's interaction was peaceful until Plaintiff turned toward Sarver to offer his defense of his prior conduct. Sarver reacted to that movement with force and the Plaintiff reacted by attempting to escape from the officers' custody by crawling through the wicket to another separate area. The Plaintiff claims he did not resist, but he makes no claim that he was delusional nor that he was unable to control his behavior because of his mental illness. Rather he claims he was acting in out of fear for his life and safety, which is a rational response assuming the facts in the Complaint are true, as this Court must do at this stage of the litigation. There are no facts that connect the use of force to Plaintiff's disability. That Plaintiff had a

disability and that force was used against him does not permit a reasonable inference to be drawn that force was used <u>because</u> of his disability.

Sarver reacted to an imminent and instantaneous situation. This was not officers responding to an inmate who would not leave or enter his cell, or who would not return a food tray, or similar circumstances that allowed reasonable time for reflection and action. Plaintiff acted and Sarver and other officers reacted instantly. There was no calm reflection or reasonable time for reflection. Under these circumstances the ADA does not apply. *Hainze v Richards*, 207 F.3d 795 (5th Cir. 2000) ( Title II of the ADA does not apply to police acting on the street before the scene is secured.) For an accommodation to be reasonable there must be time for the officer to know of the disability and to accommodate it. In these circumstances there was no time for accommodation. *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) ("In cases where the alleged violation involves the denial of a reasonable modification/accommodation, the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' " unless the need for that accommodation is obvious.)

Jail staff must often make difficult calls in tense and fast-evolving situations, and courts owe them considerable deference in such cases. *Kingsley v. Hendrickson*, 576 U.S. 389, 399, 135 S.Ct. 2466, 2474 (2015)

(Running a prison is an inordinately difficult undertaking. The safety and order at these institutions requires the expertise of correctional officials who must have substantial discretion to devise reasonable solutions to the problems they face. )(Cleaned up)

The Complaint offers no facts that the officers involved in the use of force knew Plaintiff had mental health issues. So, their conduct  could not have been because of his alleged mental health disability. If their action was not taken because of his mental health, the County cannot be liable for that conduct as their employer.

Similarly, the failure to accommodate claim, essentially asserts that the County should have trained officers in de-escalation, but here there was no time for de-escalation. The  use of force was unplanned and was a response to Plaintiff's conduct in turning towards the officer. De-escalation is not relevant under those circumstances.

The Report and Recommendation rejected this claim on the basis that Plaintiff's action could have been attributable to his disabilities. However, there are no facts that support an inference that was the reason Plaintiff hit another inmate because that person had acted in a sexually indecent manner at a different time in a different area of the ACJ.  Sergeant Sarver came to the Pod where this happened 15 minutes to a half hour later. Leaving Plaintiff in

the same area as the inmate he just hit is obviously not correctionally prudent and justifiable. He walked with Plaintiff to the sally port with another officer and they proceeded to start to handcuff him when he turned to say something and the officers used force against him. There are no facts that suggest that Plaintiff's action was related to his mental illness. No appreciable time elapsed between Plaintiff starting to turn and the use of force. Even if there was training regarding deescalation there was no time for it. This was not a situation in which a mentally ill inmate was acting in an obviously irrational manner and there was time and opportunity to deescalate. This was action and reaction.

Inmates with no mental illness can act irrationally by refusing to enter or exit a cell, engaging in loud arguments, or aggressive behavior. Therefore, the failure to provide that training is not a failure to accommodate a disability, it is a failure to accommodate anyone, which does not discriminate against the disabled, whether that failure to train is correct of incorrect. Based on Plaintiff's theory anytime force is used against a person with a mental health disability, it is a prima facie ADA violation.

Plaintiff has also failed to plead with reasonable specificity what training would have prevented the use of force under the specific circumstances of this case. If, as Plaintiff implies, Sergeant Sarver and other

officers assaulted Plaintiff because they routinely use excessive force, then Plaintiff's mental health status was not the cause of the use of force.  If the use of force was because the officers mistook Plaintiff's turning as a threat to their safety, that to was not caused by his mental health, but to their misperception of his movement. The Sergeant Sarver reacted immediately to Plaintiff's movement. Deescalations requires time and there was no time for deescalation here.

**A. Counts IV and V of the Complaint allege that Allegheny County's failure to prevent the alleged excessive use of force constitutes deliberate indifference to Plaintiff's rights and violates the Americans with Disabilities Act and the Rehabilitation Act fails to state a claim upon which relief can be granted.**

An alleged Fourteenth Amendment excessive force claim involving a pretrial detainee does not become a violation of the Americans with Disabilities Act (ADA) merely because the detainee has a disability. Allegheny County's argument, however, is limited to the facts of this case. It does not argue that accommodation for a mental health disability is never required by the ADA for any use of force.

There is no dispute that Plaintiff is a qualified individual with a disability for purposes of this motion. However, to state a claim the complaint must proffer facts that Plaintiff was denied the opportunity to participate in or benefit from the services, programs, or activities of a public

entity, or was otherwise subject to discrimination by it <u>because of</u> his disability. In addition, to recover money damages from Allegheny County, Plaintiff must allege facts it was deliberately indifferent to this violation. Plaintiff's failure to do so based on the facts pled in the Complaint is fatal to his claims under both statutes and to his claim for money.

The Complaint provides no facts that the force used against Plaintiff was used because of his mental health condition, that he was denied a service or program because of his disability, or that he was treated differently than other inmates because of his disability because the use of force occurred instantly after he turned toward Sergeant Sarver.  ECF Doc. 1, ¶ 42-43.

Plaintiff does not plead that he "swatted" the other inmate because of a mental illness. Rather, he did it because of a personal dispute based on alleged real conduct by that person.  The Complaint states no facts that connect the use of force to Plaintiff's mental illness.  The facts establish that he was approached and taken to the sallyport because he hit another inmate and not because of his disability. Plaintiff has, therefore, failed to establish a plausible claim that the use of force occurred "because of" his disability.

Moreover, even if the assault by Plaintiff and the subsequent use of force against him was related to his mental health issue it is still not an ADA violation because there are no facts that he was treated differently from other

inmates. *Scherer v. Pennsylvania Dep't of Corr.*, 2007 WL 4111412 at p. 9 (W.D. Pa. Nov. 16, 2007). *(*No failure to accommodate a prisoner's mental illness occurred when he was placed in a restrictive housing unit in response to his disability-caused conduct because there was no indication that his discipline differed from other inmates because of his disability.) That the ACJ has no different standard for an unplanned use of force such as this one does not discriminate against a disabled person because there are no such rules as to anyone, nor can there be given that unplanned uses of force are unanticipated or occur without time for planning preparation or reflection by correctional officers. *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (a municipality does not unlawfully discriminate against a disabled person by denying a benefit that it provides to no one)

The Report and Recommendation rejected this argument. It concluded that the Plaintiff was alleging that Allegheny County had an obligation to treat Plaintiff differently because of his mental illness by providing deescalation training that accommodates inmates with mental illness. However, assuming this to be correct, it nevertheless does not describe what that training would be under these facts. Deescalation training may be relevant under some circumstances, but as set forth at length above,  only when there is time to do so. If a mentally ill inmate attacks  an officer without

13

warning, or if an officer perceives an imminent threat and immediately reacts to it that is not an event that can be affected by deescalation training for the reason previously discussed.

## Conclusion

Allegheny County respectfully demands that the Court reject the Report and Recommendation and dismiss Counts IV and V oof the Amended Complaint because it does not state a claim that the alleged use of force against Plaintiff was because of his alleged disability. In the alternative, the court should dismiss the claim for monetary damages.

Respectfully submitted,

*/s/ John A. Bacharach*
John A. Bacharach
Assistant County Solicitor
Pa. I.D. #19665

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1150

John.Bacharach@alleghenycounty.us

A JURY TRIAL IS DEMANDED

14