**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KUSH WILKERSON;**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HUNTER SARVER, Sergeant; WILLIAM SUNDY, Sergeant; JASON HOLT, Sergeant; CODY COVINE, Correctional Officer; WILLIAM KEMP, Correctional Officer; ORLANDO HARPER, Warden of Allegheny County Jail; JASON BEASOM, Chief Deputy Warden; ALLEGHENY COUNTY; JOHN DOES 1-5**<br><br>**Defendants.** | : | **Case No.** 2:25-cv-919<br><br>**ELECTRONICALLY FILED**<br><br>**JURY TRIAL DEMANDED** |

**<u>PLAINTIFF'S RESPONSE TO ALLEGHENY COUNTY'S OBJECTIONS TO THE REPORT AND RECOMMENDATION TO DENY ALLEGHENY COUNTY'S MOTION TO DISMISS COUNTS IV AND V FOR FAILURE TO STATE A CLAIM</u>**

**Introduction**

Defendant's Objections merely repeat the same arguments and citations it put forth in its Motion to Dismiss, to which Plaintiff has already responded. Defendant restates the following arguments: that no facts were pled that connect Plaintiff's disability with the use of force; that there was no time to provide the accommodation requested; that officers did not have personal knowledge of Plaintiff's disabilities; that Plaintiff was treated in the same manner as others would have been; that Plaintiff failed to plead with reasonable specificity what training could have prevented the use of force; and that Plaintiff failed to plead deliberate indifference. Plaintiff will respond briefly to each point but largely relies on its Response to Defendant's Motion to Dismiss

(ECF 41), which has already addressed each of these points in detail. The filed Report and Recommendation (ECF 44) recommends that Allegheny County's Motion to Dismiss Counts IV and V of the Amended Complaint be denied, and Plaintiff agrees.

## I. Plaintiff's Actions Were Attributable to Symptoms of His Psychiatric Disabilities

Again, Defendant continues to claim that no facts connecting Plaintiff's disability with the use of force were pled. Defendant's Objections to the Report and Recommendation, ECF Doc. 47 [hereinafter "Def's Objections"], 7. Plaintiff clearly outlined in his complaint his various diagnoses, the symptoms of his diagnoses, and how those symptoms help to explain *both* his interaction with his former cellmate as well as why he partially turned around towards Defendant Sarver. First Amended Complaint, ECF Doc. 31 [hereafter "FAC"], ¶¶ 75-90.

Plaintiff also explained several ways in which the use of force would not have occurred had Defendant Sarver been educated about these common psychiatric disabilities and trained on how best to interact with such individuals, including understanding that confusion and brief delays in compliance are common symptoms which can be easily dealt with in part by calm communication with the individual. *Id.* at ¶ 90.

## II. No Exigent Circumstances Existed

Defendant's arguments largely rely on the theory that when an unarmed, partially handcuffed individual turns towards a correctional officer to speak to him, it creates a reasonably exigent circumstance such that "no time for de-escalation" exists. Def's Objections at 9. This is both nonsensical and circular reasoning. The time for de-escalation did not exist *because* Defendant Sarver did not wait—he immediately resorted to force. This is exactly what de-escalation training is meant to prevent. The fact that a correctional officer did not attempt to de-escalate cannot then be used to claim that no time for attempting to do so existed.

Additionally, this situation was plainly not exigent. Plaintiff made no violent movements or threats; he was merely attempting to communicate with Defendant Sarver. Far more dangerous situations have been deemed by courts to not constitute exigent circumstances. *Washington v. Brown*, 2024 WL 2214686, at *15 (M.D. Pa. May 15, 2024) (holding that a mentally disabled individual running away with a long rifle is not necessarily a situation where no plausible reasonable accommodation could apply); *Bentler v. Nederostek*, 2023 WL 3510822, at *2, *10 n. 2 (M.D. Pa. May 17, 2023) (declined to apply the exigent circumstances exception for providing reasonable accommodation of mental health training where police shot a man who refused to put down his rifle and took a step towards officer).

**III. Defendant's Remaining Arguments Are Irrelevant or Inaccurate**

Defendant again argues that the correctional officers involved did not have personal knowledge of Plaintiff's disabilities. Def's Objections at 9. Again, the ADA claim brought by Plaintiff alleges that it was the *County*, not the individual officers, who knew of his particular disabilities and also of the high prevalence of psychiatric disabilities among the jail population, and therefore should have adequately trained its staff on common symptoms of psychiatric disabilities and how to interact with individuals who may have such diagnoses. The personal knowledge of the officers is irrelevant for purposes of establishing knowledge under the ADA. Indeed, the fact that they did not suspect or consider that Defendant was exhibiting symptoms of a mental illness is indicative of a lack of training.

Defendant also repeats that Plaintiff was treated the same as others, which is precisely the issue, as it is demonstrative in this case of the failure to provide the reasonable accommodation of adequate training. Defendant notes:

> "Inmates with no mental illness can act irrationally by refusing to enter or exit a cell, engaging in loud arguments, or aggressive behavior. Therefore, the failure to

> provide that training is not a failure to accommodate a disability, it is a failure to accommodate anyone, which does not discriminate against the disabled, whether that failure to train is correct of [sic] incorrect." Def's Objections at 10.

This is another frivolous argument. Many symptoms of mental illness can certainly occasionally be exhibited by those without disabilities (depressed mood, anxiety, sleeplessness, etc.), but certain symptoms plainly occur more often and more severely for those with particular psychiatric diagnoses, and properly trained correctional officers should theoretically respond to anyone exhibiting similar symptoms as Plaintiff with basic de-escalation tactics.[1]

Defendant additionally argues that Plaintiff failed to plead with reasonable specificity what training would have prevented the use of force. This is untrue. Plaintiff's complaint stated:

> "If Defendant Sarver had been properly educated about these common psychiatric disabilities and trained in how to interact with individuals who have those disabilities, he would have known the following: []Brief delays in compliance are common with individuals with paranoid schizophrenia or other psychiatric disabilities, as disorganized thoughts are a classic symptom[;] Mr. Wilkerson deciding to explain himself right in that moment – rather than later or at a disciplinary hearing – can also be explained by disorganized thoughts and impulsive behavior[;] Taking the time to listen and communicate is an essential part of de-escalation, especially as it relates to individuals with psychiatric disabilities[;] Individuals with paranoid schizophrenia and PTSD are easily startled and often on edge, so communicating the reason for handcuffing and transporting someone is important, especially if they are expressing confusion[;] Calmly listening and responding are among the most basic methods of deescalation and one of the most effective methods to communicate with individuals with psychiatric disabilities. Defendant Sarver failed to engage in the most fundamental and well-known deescalation tactics, demonstrating a lack of understanding of how psychiatric disabilities can manifest and how to respond appropriately." FAC at ¶¶ 90-91.

Finally, Defendant also incorrectly claims that Plaintiff did not plead facts supporting his claim of deliberate indifference. Plaintiff gave several examples of why Defendant should have been aware that the ADA was substantially likely to be violated in this manner, including but not

---

[1] This is not to say that anyone exhibiting possible symptoms of mental illness may automatically bring an ADA claim if they are assaulted by corrections staff—they must still be a qualified individual with a disability and meet the remaining ADA requirements.

limited to known (and ACJ's self-reported) statistics regarding the high number of uses of force at ACJ, the regular use of tasers/stun guns and physical force by corrections officers against individuals with disabilities for purely punitive reasons, multiple class action lawsuits brought against the jail wherein ADA claims were brought due to the use of excessive force on individuals with psychiatric disabilities, and numerous lawsuits and grievances against Defendant Sarver in particular for excessive force. FAC at ¶¶ 21-33.

**Conclusion**

Defendant's Objections to the Report and Recommendation present no additional rationale for upholding Defendant's Motion to Dismiss. Plaintiff has clearly stated plausible claims under the ADA and RA. This Court should adopt the Report and Recommendation.

Respectfully submitted,

*/s/ Dolly Prabhu*
PA I.D. No 328999
dprabhu@alcenter.org
*/s/ Jaclyn Kurin**
D.C. I.D. No. 1600719
jkurin@alcenter.org
*/s/ Bret Grote*
PA I.D. No. 317273
bretgrote@alcenter.org
**Abolitionist Law Center**
PO Box 23032
Pittsburgh, PA 15222
412-654-9070
**pro hac vice pending*